UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABIGAIL K.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

1:23-CV-01131 EAW

## INTRODUCTION

Represented by counsel, plaintiff Abigail K. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on November 17, 2020. (Dkt. 5 at 34, 122-23).[1] In her applications, Plaintiff alleged disability beginning November 17, 2019. (*Id.* at 34, 289). Plaintiff's applications were initially denied on February 25, 2021, and on reconsideration on May 12, 2021. (*Id.* at 34, 186-211). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Ryan A. Alger on May 26, 2022. (*Id.* at 54-72). On July 29, 2022, the ALJ issued an unfavorable decision. (*Id.* at 31-51). Plaintiff requested Appeals Council review; her request was denied on September 8, 2023, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-12). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *see id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

I.     **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act though September 30, 2020. (Dkt. 5 at 36). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since November 17, 2019, the alleged onset date. (*Id*. at 37).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of epilepsy. (*Id*.). The ALJ further found that Plaintiff's medically determinable impairment of bipolar depression was non-severe. (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 41). The ALJ particularly considered the criteria of Listing 11.02 in reaching this conclusion. (*Id*. at 41-42).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), with the following additional limitations:

> [Plaintiff] can carry out and remember simple instructions, never work around hazards or operate hazardous machinery, and never tolerate exposure to unprotected heights.

(*Id*. at 42-43). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id*. at 45). At step five, the ALJ relied on the testimony of a vocational expert to conclude that,

considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy she could perform, including the representative occupations of hand packer, laundry worker, and kitchen helper. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 46).

## II.     Remand for Further Administrative Proceedings is Required

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the Appeals Council improperly rejected relevant medical opinion evidence; (2) the ALJ failed to account for limitations he found "persuasive" in the opinion of Plaintiff's treating social worker; and (3) the ALJ failed to evaluate Plaintiff's non-compliance with her prescribed treatment in the context of her bipolar disorder. (Dkt. 6-1 at 1). For the reasons set forth below, the Court finds that the Appeals Council erred in rejecting the opinion of Plaintiff's treating neurologist Dr. Arie Weinstock and that remand for further proceedings is required

### A.     Appeals Council Consideration of New Evidence

"Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996); *see* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "[T]he Appeals Council will review a case based on additional evidence if, in addition to meeting other requirements, the evidence relates to the period on or before the date of the hearing decision and there is a reasonable probability that it would change the outcome of the decision." *Tara P. v. O'Malley*, No. 8:23-CV-448 (MJK), 2024 WL

1219697, at *4 (N.D.N.Y. Mar. 21, 2024); see also *James F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00049 EAW, 2023 WL 4072443, at *7 (W.D.N.Y. June 20, 2023) ("Material evidence is both relevant to the claimant's condition during the time period for which benefits were denied and probative, and the claimant must show a reasonable possibility that the new evidence would have influenced the Commissioner to decide the claimant's application differently.").[2]

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record . . . when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45.  The Court's task is then to "review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Id.* at 46.  "If the additional evidence undermines the ALJ's decision, such that it is no longer supported by substantial evidence, then the case should be reversed and remanded." *Webster v. Colvin*, 215 F. Supp. 3d 237, 244 (W.D.N.Y. 2016) (citing *Brown v. Apfel*, 174 F.3d 59, 65 (2d Cir. 1999)).

---

[2] A claimant also must show "good cause" for the late submission of the evidence. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).  Here, Dr. Weinstock issued his retrospective opinion on September 1, 2022, after the date of the ALJ's decision. (Dkt. 5 at 25).  The record indicates that Dr. Weinstock had previously refused to complete a medical opinion statement in advance of the hearing before the ALJ. (*Id.* at 70).  Defendant has not argued that Plaintiff did not have good cause for the late submission of Dr. Weinstock's opinion, nor did the Appeals Council identify lack of good cause as a reason for rejecting Dr. Weinstock's opinion.  *See Crystal K. v. Comm'r of Soc. Sec.*, No. 2:23-CV-670, 2024 WL 4471361, at *10 (D. Vt. Oct. 11, 2024) ("District courts in this Circuit have declined to address the 'good cause' requirement where the Appeals Council did not assert it as a reason for declining to review new evidence.").

In this case, Plaintiff submitted a number of additional records to the Appeals Council, including Dr. Weinstock's opinion. (Dkt. 5 at 7). The Appeals Council found that the additional evidence submitted by Plaintiff did "not show a reasonable probability that it would change the outcome of the decision" and accordingly "did not exhibit [the] evidence." (*Id.*). Plaintiff contends that this was error as to Dr. Weinstock's opinion and the Court agrees.

There is no question that Dr. Weinstock's opinion was new, since it postdated the ALJ's decision. (*See* Dkt. 5 at 25). It also relates to the impact of Plaintiff's epilepsy during the relevant time period. "The principal issue" before the Court is thus whether Dr. Weinstock's opinion "alter[s] the weight of the evidence to a degree that requires remand." *Crystal K. v. Comm'r of Soc. Sec.*, No. 2:23-CV-670, 2024 WL 4471361, at *6 (D. Vt. Oct. 11, 2024). The Court concludes that it does.

The ALJ himself stated at the hearing that it would be "helpful" to have an opinion from one of Plaintiff's medical providers regarding her epilepsy. (Dkt. 5 at 70). In his decision, the ALJ was influenced by the fact that the record did not contain "opinion evidence from the claimant's medical providers regarding her seizure activity." (*Id.* at 44). In other words, Plaintiff submitted to the Appeals Council an opinion that the ALJ had expressly commented on the absence of and that the ALJ had said would be helpful in assessing Plaintiff's RFC. Yet the Appeals Council found that there was not even a

reasonable probability that Dr. Weinstock's opinion would change the ALJ's determination.

This conclusion is not supported by substantial evidence. Dr. Weinstock, a neurologist, had been treating Plaintiff since 2019, with ongoing office visits every one to four months. (*Id*. at 21). He explained that Plaintiff suffered from two to four generalized clonic-tonic seizures per month, with loss of consciousness and sometimes incontinence. (*Id*. at 21-22). He further explained that Plaintiff did not always have warning of an impending seizure and that she would suffer from postictal manifestations such as confusion, exhaustion, and irritability for one to two hours after a seizure. (*Id*. at 22). Due to her impairments, Dr. Weinstock opined that—in addition to being unable to work at heights or with machinery—Plaintiff would need to take multiple unscheduled breaks during the workday and would need to rest for 24 hours after a seizure before returning to work. (*Id*. at 23). Dr. Weinstock opined that Plaintiff was incapable of even low stress jobs and that she was likely to be absent from work more than four days per month as a result of her impairments. (*Id*.).

Dr. Weinstock's opinion is seemingly supported by and consistent with his treatment records. *See Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-cv, 2024 WL 2174236, at *2 (2d Cir. May 15, 2024) ("In evaluating the persuasiveness of a medical opinion, an ALJ must consider five central factors, the two most important factors being supportability and consistency." (internal quotation marks omitted)). Dr. Weinstock's treatment records demonstrate that Plaintiff underwent video EEG monitoring which showed "frequent generalized spike-wave complexes," and that over a four-day

period she had "3 typical seizures with semiology of behavioral arrest followed by head deviation to the right followed by general tonic-clonic seizures," as well as "a[n] absence type seizure[.]" (Dkt. 5 at 883). Dr. Weinstock's treatment records consistently noted breakthrough seizures. (*See, e.g., id*. at 885, 892, 912). Treatment records from November 2019 reflect that Plaintiff was experiencing five to six seizures per month. (*Id*. at 572).

The Commissioner acknowledges that Dr. Weinstock's " observations in his opinion are consistent with the information contained in several of the treatment notes," but inexplicably argues that this supports the Appeals Council's decision not to accept Dr. Weinstock's opinion. (Dkt. 8-1 at 16). The gist of the Commissioner's argument seems to be that the ALJ would necessarily have rejected Dr. Weinstock's opinion because the ALJ did not independently draw the conclusions from the treatment records that Dr. Weinstock identified in his opinion, but instead credited the opinions of consultative examiner Dr. Hongbiao Liu and state agency reviewing physicians Dr. B. Stouter and Dr. G. Wang.[3]

This argument ignores the Commissioner's regulations and how they instruct the ALJ to assess the medical opinions of record. Specifically, if faced with two medical opinions that are "equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is instructed to expressly consider "other most persuasive factors," including the source's relationship with the claimant and specialization. 20 C.F.R.

---

[3] Dr. Liu opined that Plaintiff should avoid heights and heavy machine operation due to her seizures but had no other limitations for physical activity. (Dkt. 5 at 674). Drs. Stouter and Wang opined that Plaintiff needed to avoid all exposure to hazards. (*Id*. at 132, 162).

§ 404.1520c(b)(2), (b)(3), (c)(3), (c)(4). These factors would arguably lead one to find Dr. Weinstock's opinions persuasive, because he had been Plaintiff's treating neurologist for years.

The Commissioner's other arguments in support of the Appeals Council's rejection of Dr. Weinstock's opinion are also unavailing. The Commissioner spends significant time discussing the ALJ's assessment of Plaintiff's bipolar disorder. (*See* Dkt. 8-1 at 13-15). But Dr. Weinstock's opinion was specifically about the impact of Plaintiff's epilepsy. It is of no moment whether the ALJ was correct in determining that Plaintiff's bipolar disorder was non-severe if his conclusions regarding Plaintiff's epilepsy are not supported by substantial evidence. The presence of Dr. Weinstock's new, arguably supportable and consistent opinion identifying limitations beyond those found by the ALJ calls into question the reliability of the ALJ's determination, and further consideration of the new evidence was required.

To be clear, the Court is not suggesting that the ALJ would have been required to credit Dr. Weinstock's opinion if it had been before him. That is not the question before the Court, and the ultimate weighing of the evidence is for the Commissioner. But the conclusion that there was no reasonable probability that Dr. Weinstock's opinion would change the outcome of the ALJ's decision cannot bear scrutiny, because it "fails to come to grips with the fact that the new evidence undercuts the stated rationale of the ALJ." *Lugo v. Berryhill*, 390 F. Supp. 3d 453, 460-61 (S.D.N.Y. 2019); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 88 (2d Cir. 2015) ("the ALJ's decision was not supported by substantial evidence because the new evidence contradicted the ALJ's conclusion in

important respects").

"In sum, because there is a reasonable probability that plaintiff's additional evidence would change the outcome of [the ALJ's] decision, the Appeals Council erred by summarily rejecting and failing to consider the additional evidence." *Geoffry C. v. Comm'r of Soc. Sec.*, No. 8:23-CV-00786 (LEK/CFH), 2024 WL 4442723, at *7 (N.D.N.Y. Aug. 23, 2024), *adopted*, 2024 WL 4132224 (N.D.N.Y. Sept. 10, 2024). Under these circumstances, the appropriate course is remand "for reconsideration in light of [the] new evidence." *Vosburgh v. Comm'r of Soc. Sec.*, No. 17-CV-6587P, 2019 WL 2428501, at *6 (W.D.N.Y. June 11, 2019). "On remand, the Commissioner is free to consider how the new evidence affects the entirety of the ALJ's decision." *Lugo*, 390 F. Supp. 3d at 461.

### B. Remaining Arguments

As set forth above, Plaintiff has identified two additional reasons why she contends the ALJ's decision was erroneous. Because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Vosburgh*, 2019 WL 2428501, at *6 ("Vosburgh advances several other arguments she believes require remand. In light of the Appeals Council's error, however, the Court need not reach Vosburgh's remaining contentions.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 6) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court

is directed to enter judgment and close this case.

    SO ORDERED.

                                      _____
                                      ELIZABETH A. WOLFORD
                                      Chief Judge
                                      United States District Court

Dated:  December 27, 2024
         Rochester, New York